UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| PRISCILLA K. GERHARDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:08-CV-549 CAN |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On November 26, 2008, Plaintiff, Priscilla Gerhardt ("Gerhardt"), filed her complaint with this Court. On April 20, 2009, Gerhardt filed her opening brief asking this Court to enter judgment in her favor or to remand this matter to the Commissioner pursuant to 42 U.S.C. § 405(g). On June 29, 2009, Defendant, Commissioner of Social Security, Michael J. Astrue ("Commissioner"), filed his response brief. On August 10, 2009, Gerhardt filed her reply. This Court may issue the following opinion and order pursuant to the consent of the parties and 28 U.S.C. § 636(c).

I. **PROCEDURE**

On February 8, 2005, Gerhardt filed an application for disability insurance benefits, alleging disability beginning January 24, 2004. The claim was initially denied on May 11, 2005, then again upon reconsideration on August 3, 2005.

On March 28, 2008, an administrative law judge ("ALJ") filed a decision denying Gerhardt's application for benefits. The ALJ found that Gerhardt had not engaged in gainful substantial gainful activity since January 24, 2004. Also, the ALJ found that Gerhardt suffered

1

from right shoulder pain, carpal tunnel syndrome in the right hand, fibromyalgia, back and neck pain, and obesity. However, the ALJ also found that Gerhardt's impairments or combination of impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then found that Gerhardt had the residual functional capacity ("RFC") to perform light work in jobs that permit her to sit and stand as needed with occasional overhead reaching with the upper extremity. The ALJ further found that Gerhardt was capable of performing past relevant work as a receptionist as permitted by her RFC. Finally, the ALJ found that Gerhardt had not been disabled from January 24, 2004 through March 28, 2008, the date of the decision.

Gerhardt filed a request for review of the ALJ's decision with the Social Security Appeals Council, which was denied on September 22, 2008, and as a result, the ALJ's decision became the final determination of the Commissioner. On November 26, 2008, Gerhardt filed a complaint in this Court seeking summary judgment as to her claims or a remand of the ALJ's opinion for reconsideration. This Court may issue the following opinion and order pursuant to the consent of the parties and 28 U.S.C. § 636(c).

## II. ANALYSIS

### A. Facts

Gerhardt was fifty years old at the time the ALJ denied her claim. Gerhardt stands 5'1" and weighs approximately 220 pounds. Gerhardt completed high school and has worked as a candy wrapper, bus driver, heavy machinery operator, receptionist, and as a salesclerk at department store. For purposes of disability insurance benefits, Gerhardt is insured through June 30, 2009.

Gerhardt claims to be unable to work due to several conditions, including arthritis, carpal tunnel syndrome, leg swelling, sleep apnea, lower back pain, high blood pressure, numbness and pain in her legs, fibromyalgia, depression, anxiety, panic attacks, rapid heart beat, chest pain, swelling, and memory problems. She receives treatment for several of these conditions, such as pressurized stockings for leg swelling, a CPAP machine for sleep apnea, and pain medication.

On February 14, 2004, Gerhardt saw Nurse McCann, a nurse practicioner, complaining of fatigue and aches and pains of the upper extremities, having quit due to not feeling well enough to work, and was also noted to have hypertension, hyperlipidemia, sleep apnea and a left ear abscess; she was prescribed several treatments for those conditions. On March 2, 2004, Gerhardt was noted to have decreased range of motion in her cervical spine with spasm, a right shoulder lipoma, paresthesias and hyperlipidemia.

On March 24, 2004, Gerhardt underwent removal of a large right shoulder lipoma and on April 4, 2004, was seen for suture removal. On August 30, 2004, Nurse McCann noted positive Tinel's and Phalen's signs in the right wrist, tenderness to the thoracic and cervical spines upon palpitation, tight contracted muscles, tenderness to the left foot and shins, chronic venous changes in the lower extremities bilaterally and was given medication for her pain with diagnoses of bilateral carpal tunnel syndrome, thoracic spine pain, left foot pain and parethesias. On September 2, 2004, a left foot X-ray revealed calcaneal spurs at the Achilles tendon.

On November 5, 2004, Gerhardt reported her shoulder being her main source of pain, but with continued lower back, mid back and feet pain; she was noted to have evidence of AC joint arthritis upon X-ray and received a steroid injection into the joint to try and relieve pain as well as starting her on treatment. On February 23, 2005, Dr. Ralph Inabnit found Gerhardt to have

3

decrease in right shoulder abduction with pain over the AC joint; he diagnosed right AC joint tenderness, injected the joint with medication and put her on a stretching exercise program.

On March 22, 2005, Gerhardt underwent an examination by a Dr. Inabnit, who found hypertension, chronic back pain, painful extremity, limitations in the range of motion in her cervical and lumbar spines, reduced grip strength, reduced motor strength in upper and lower extremities, bilateral carpal tunnel with a positive Tinel's sign and an inability to open a jar, obesity, fatigue, headaches and sleep apnea with proper use of her CPAP machine. Dr. Inabnit noted that Gerhardt's chronic back pain limits her ability to stand, lift more than 20 pounds, flex, bend, stoop, push/pull, and perform repetitive motions.

On May 5, 2005, Dr. A. Landwehr, a non-examining state agency physician, completed a physical RFC form by checking off boxes to indicate that Gerhardt is capable of light work with occasional climbing of stairs, balancing, crawling, handling and fingering and no climbing of ladders, ropes and scaffolds with a need to avoid exposure to extreme temperatures, wetness, humidity, fumes, gases, odors, poor ventilation and heights. This assessment was affirmed by Dr. R. Wenzler on September 6, 2005. On May 6, 2005, Dr. W. Shipley, a non-examining state agency physician, completed a psychiatric review technique form finding Gerhardt to have non-severe anxiety disorders.

On June 28, 2005, Nurse McCann noted a right tender shin and bilateral edema with sprayed flat feet; she was given orthotics and prescribed medication. On July 12, 2005, Dr. Inabnit gave Gerhardt another right shoulder injection. On November 10, 2005, Gerhardt continued to have right rotator cuff tenderness with decreased range of motion and tenderness with palpitation and a diagnosis of right rotator cuff tendonitis and AC joint degeneration. On

November 15, 2005, a right shoulder MRI revealed mild changes of rotator cuff tendinopathy, minimal effusion consistent with burstitis, a labral tear and moderate degenerative changes at the acromioclavicular joint.

On December 15, 2005, Gerhardt was started on treatment for depression due to fibromyalgia. On March 16, 2006, Nurse Snyder found Gerhardt to have mild depression, right shoulder tendonitis and pain, right carpal tunnel and hypertension. On June 15, 2006, Nurse Snyder found Gerhardt to have positive trigger point tenderness down her back, arms and legs and was treated for her fibromyalgia pain. On May 3, 2007, Nurse Snyder noted Gerhardt to suffer from heart palpitations with anxiety, for which she was given medication, in addition to her chronic aches and pains caused by fibromyalgia.

On June 29, 2007, Nurse Snyder completed a physical RFC form opining that Gerhardt can occasionally lift up to 10 pounds, frequently lift less than 10 pounds, stand/walk less than 2 hours in a workday, sit with the ability to alternate positions to relieve pain, limitations in pushing and pulling with hands and feet due to parethesias in her hands and feet, no climbing, balancing, kneeling, crouching, crawling and stooping, and only occasional reaching, handling, fingering and feeling due to carpal tunnel syndrome and rotator cuff tendonitis.

On August 21, 2007, Gerhardt underwent a consultative neurological examination by a DDS-selected doctor, Shuyan Wang, who found her to have bilateral hand and feet, lower back and right shoulder pain, obstructive sleep apnea, gastroesophageal reflux disease, depression, anxiety, hypertension and an enlarged heart. Upon examination, Dr. Wang noted obesity, left-hand dominance, edema at the fingers, a normal gait and no tenderness. Dr. Wang then completed a Medical Source Statement by checking off boxes to indicate Gerhardt can perform 2

5

hours of sitting at a time with 6 hours of sitting in a normal workday, 4 hours of standing, 3 hours of walking, lifting and carrying of up to 10 pounds frequently and 20 pounds occasionally despite MRI showing right shoulder tendinopathy, bursitis, arthritis and labral tear, occasional right handed reaching and pushing/pulling, frequent use of the hands, occasional climbing, kneeling, crouching and crawling, frequent balancing and stooping, and only occasional exposure to unprotected heights and extreme temperatures.

At the December 2007 hearing, Dr. Leonard Fischer testified as the Vocational Expert ("VE"). The VE was asked about Gerhardt's work as a receptionist, which she performed sitting a lot, answering the phones and doing credit checks. The VE indicated that such an individual with Gerhardt's age, education and work experience and the ability to do light work with occasional overhead work with the right upper extremity and a sit/stand option every 30 minutes could perform Gerhardt's past work as a receptionist. The VE then testified to other jobs including a parking lot attendant, office helper, information clerk, electronics inspector, and inspector/hand packager, that someone with Gerhardt's limitations could perform. The VE testified that clerical jobs would allow an hour lunch break and 15 minute morning and afternoon breaks. The VE testified that an employee typically could only miss one workday per month at these jobs.

Upon cross-examination by counsel, the VE testified that needing to elevate one's legs two hours a day would eliminate all work. If limited to only frequent use of the dominant hand and less than that with the non-dominant hand, the VE testified that the receptionist position would still be available. Occasional use of both hands would eliminate all work. The VE then stated that panic attacks causing the employee to miss time during the day would be an

6

accommodation, and the person could not perform competitive employment.

B.      Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

C. Gerhardt's Motion for Summary Judgment or Remand

To be entitled to benefits under the Social Security Act, Gerhardt must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's

7

residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352.

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The major issues this Court must resolve are: (1) whether the ALJ's determination of residual functional capacity was supported by substantial evidence, (2) whether the ALJ properly assessed Gerhardt's credibility, and (3) whether the ALJ made an erroneous finding at step four. This Court will address each of Gerhardt's arguments in turn.

> 1. The ALJ's residual functional capacity determination is supported by substantial evidence.

First, Gerhardt alleges that the ALJ improperly determined her residual functional capacity. In particular, Gerhardt alleges that the ALJ failed to account for all of Gerhardt's mental limitations and failed to consider Dr. Inabnit's and Nurse McCann's opinions, which

8

support greater limitations than the ALJ found.

A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005). An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart 336 F.3d 535, 539 (7th Cir. 2003). A decision is supported by substantial evidence if based upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972).

Gerhardt argues that even though the ALJ states that he relied on the opinions of Dr. Wang and the state agency physicians, he fails to incorporate all of the limitations they articulated. Specifically, Gerhardt states that the ALJ did not include the state agency physicians' finding that Gerhardt was limited to only occasional handling and fingering, which would eliminate all work. In the ALJ's opinion, he noted that Dr. Wang and Dr. Inabnit both indicated that Gerhardt could pick up a coin, write a letter, and grip with both hands at full strength. As a result of these doctors' opinions that Gerhardt could use her hands more than she testified, the ALJ determined that Gerhardt was capable of using her upper extremities at a level consistent with a light RFC. The opinions of Dr. Wang and Dr. Inabnit are sufficient to support the ALJ's conclusion regarding Gerhardt's use of her hands.

Next, Gerhardt contends that the ALJ failed to explain his determination that Gerhardt could sit or stand alternately during a work day. The ALJ stated in his opinion that the evidence showed that Gerhardt could perform normal functions, including walking and standing. The ALJ determined that Gerhardt could only sit and stand alternately based on her tesitmony to Dr.

9

Inabnit. Further, Gerhardt argues that she could not perform the jobs available to her if she were to stand for thirty minutes at a time. The ALJ relied on the VE's testimony to determine what jobs Gerhardt could perform based on her RFC as determined by the ALJ. Thus, the ALJ has explained his determination regarding Gerhardt's ability to stand and sit alternately during the work day, and supported his determination with sufficient evidence on the record.

Gerhardt also argues that the ALJ improperly disregarded Gerhardt's nurse's opinion even though Nurse Snyder was a treating nurse. However, the ALJ stated that he did not give Nurse Snyder's opinion much weight because iT was not accompanied by any objective medical evidence. Also, the ALJ found that the nurse's determination that Gerhardt would have to raise her legs for two hours every day was not supported by any other treating or examining physicians. Finally, the ALJ stated that Nurse Snyder's opinion is entitled to less weight given that she is not a doctor, but a nurse. Because Nurse Snyder is a nurse practitioner, she is not an "acceptable medical source" as provided by Social Security Regulations. Sydow v. Astrue, No. 06-540, slip op. at 5, 2009 WL 362309 (N.D. Ind. 2009) (citing SSR 06-03p and explaining that nurse practitioners are not acceptable medical sources unless they have seen the patient more than the treating source and has provided better explanation or supporting evidence for the opinion)). However, SSR 06-03p requires only that the ALJ consider Nurse Snyder's opinion and sufficiently identify his reasons for not giving the opinion greater weight. Here, the ALJ's opinion does not support Gerhardt's contention of impropriety. Rather, the ALJ has supported his decision with sufficient evidence.

Gerhardt finally contends that the ALJ did not properly consider all of her impairments, especially fibromyalgia. The ALJ stated in his opinion that although Gerhardt was diagnosed

with fibromyalgia, the record does not document other symptoms consistent with that condition. The ALJ particularly took note of the lack of trigger points that accompany fibromyalgia. Also, the ALJ found it important that Gerhardt did not consistently use pain medication, indicating that her symptoms were not as severe as she indicated in her testimony. The ALJ has given reasons for his determination based on the evidence on the record. As a result, this Court finds that the ALJ has sufficiently considered Gerhardt's impairments including fibromyalgia.

Because the ALJ has properly articulated his reasons for relying on Dr. Wang and the state agency physician's opinions, determining that Gerhardt could sit or stand during the work day, giving less weight to Gerhardt's nurse's opinion, and considering Gerhardt's fibromyalgia symptoms, this Court finds that the ALJ's RFC determination is sufficiently supported by the evidence and must be upheld.

    2.    <u>The ALJ's determination of Schultz's credibility is supported by substantial evidence</u>.

Gerhardt alleges that the ALJ's determination of her credibility was erroneous. Specifically, Gerhardt contends that the ALJ's credibility determination was based on objective factors alone, factors which did not support the ALJ's opinion. Furthermore, Gerhardt argues that the ALJ's interpretation of the medical evidence on record regarding Gerhardt's allegations of pain and other symptoms is erroneous.

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. <u>Jens v. Barnhart</u>, 347 F.3d 209, 213 (7th Cir. 2003); <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001); <u>see also</u> <u>Prochska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006) (holding "[o]nly if the trier of fact

grounds his credibility finding in an observation or argument that is unreasonable or unsupported. . . can the finding be reversed."). However, as a bottom line, Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2001); S.S.R. 96-7p. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski, 245 F.3d at 887; S.S.R. 966-7p.

Gerhardt argues that the ALJ impermissibly found her testimony to not be credible regarding the intensity, persistence, and limiting effects of her claimed symptoms. Specifically, Gerhardt contends that the ALJ's reasons for finding her testimony not credible were all based on objective factors. While an ALJ may base his opinion on objective factors rather than subjective considerations, by doing so, the reviewing court has greater freedom to review the ALJ's decision. Indoranto v. Barnhart, 374 F.3d 470, 474 (7th Cir. 2004). However, the ALJ's finding will only be overturned if it is patently wrong. Jens, 347 F.3d at 213. Here, the ALJ has noted several reasons to support his credibility finding. First, the ALJ found that Gerhardt's testimony was inconsistent with the findings of Dr. Wang, an examining physician, and the findings of the state agency physicians. Specifically, Dr. Wang knew about Gerhardt's fibromyalgia, obesity, and other conditions but still found her able to perform a range of activities consistent with the ALJ's RFC finding, rather than Gerhardt's testimony regarding her

limitations. Thus, this Court finds that the ALJ's determination to find Dr. Wang's testimony credible and Gerhardt's testimony not credible was not patently wrong and affirms that determination.

Gerhardt also argues that the ALJ improperly considered the evidence regarding her pain. In particular, Gerhardt argues that the ALJ misinterpreted the evidence regarding her occasional use of pain medication. The ALJ found that the occasional use of pain medication was due to the fact that Gerhardt's symptoms were not as severe as she testified. This dispute is a factual one, in which this Court cannot re-weigh the evidence unless the ALJ's opinion is patently wrong. As this Court finds that the ALJ's determination regarding Gerhardt's occasional pain medication use is not patently wrong, this Court cannot overturn that determination.

Finally, Gerhardt contends that the ALJ erroneously determined her testimony regarding her mental impairments to not be credible. The ALJ stated in his opinion that even though Gerhardt complained of depression, there was no indication on the part of her nurse practitioner who provided the prescription that she exhibited any indications of depression. Also, the ALJ noted that Drs. Inabnit and Wang, who examined Gerhardt, stated that her mood and affect were normal. Furthermore, the ALJ stated that there was no indication on the record of any memory problems, contrary to Gerhardt's testimony. Thus, the ALJ has again supported his credibility finding regarding Gerhardt's mental impairments.

Because the ALJ has given reasons for his credibility findings, and this Court finds that the ALJ's findings are not patently wrong, this Court upholds the ALJ's finding that Gerhardt's testimony regarding the intensity, persistence, and limiting effects of her symptoms is not credible.

3. <u>The ALJ's finding at step four was proper and supported by substantial evidence</u>.

Finally, Gerhardt argues that the ALJ made an erroneous conclusion at step four. At step four, Gerhardt contends that the ALJ did not provide an accurate hypothetical to the VE, taking into account all symptoms and impairments. As such, Gerhardt argues, the VE's testimony could not be relied on as substantial evidence. Gerhardt further contends that the ALJ failed to perform a proper analysis of Gerhardt's past work before finding her capable of performing it. Moreover, Gerhardt argues that the ALJ's step five determination is flawed because of his failure to verify the VE's testimony regarding the quantity of available jobs.

At step four of the ALJ's analysis, the ALJ must determine if the claimant still has an RFC that permits her to perform her past relevant work. 20 C.F.R. § 404.1520(e). In determining if the claimant can perform her past relevant work, the ALJ must compare the demands of the work with her present capacities. <u>Strittmatter v. Schweiker</u>, 729 F.2d 507, 509 (7th Cir.1984). The ALJ can "base his comparison on the functional demands and job duties of the applicant's past occupation as generally required by employers throughout the national economy." <u>Orlando v. Heckler</u>, 776 F.2d 209, 215-16 (7th Cir.1985). Further, an applicant who "cannot perform the excessive functional demands and or job duties actually required in the former job but can perform the functional demands as generally required by employers throughout the economy" should not be found to be disabled. <u>Smith v. Barnhart</u>, 388 F.3d 251, 253 (7th Cir. 2003). "The ALJ is only required to incorporate into his hypotheticals those impairments and limitations that he accepts as credible." <u>Schmidt v. Astrue</u>, 496 F.3d 833, 846 (7th Cir. 2007). At step five, if the claimant cannot perform her past relevant work, then the ALJ must determine if she can perform other work in society. 20 C.F.R. § 404.1520(g). If the

claimant can perform a significant number of jobs available in the economy then the claimant is not disabled. 20 C.F.R. § 404.1520(g).

Gerhardt argues that the ALJ failed to pose an accurate hypothetical to the VE in step four because he did not include all of Gerhardt's symptoms and impairments. Specifically, she contends that the ALJ failed to incorporate her mental limitations, and her hand limitations. However, contrary to Gerhardt's argument, the ALJ was only required to incorporate into his hypothetical the impairments and limitations that he accepted as credible. See Schmidt, 496 F.3d at 846. The ALJ stated in his RFC determination that he did not find credible Gerhardt's claims of mental impairments because such impairments were not supported by the evidence in the record. As to Gerhardt's hand limitations, the ALJ stated that he relied on Dr. Wang's findings that Gerhardt could use her hand to perform many tasks, such as picking up coins, and buttoning clothing, as well as having normal grip strength and a full range of motion in her hands and wrists. Thus, while the ALJ's hypothetical to the VE did not include mental limitations or hand impairments, the ALJ was entitled to leave out those impairments because he did not find them credible. See Schmidt, 496 F.3d at 846. This Court finds, therefore, that the hypothetical posed to the VE was proper.

Gerhardt next contends that the ALJ failed to perform a proper analysis of Gerhardt's past work before finding her able to perform it. Specifically, she argues that because the ALJ's RFC was flawed, his assessment of her ability to perform her past relevant work is also flawed. This Court has already decided that the ALJ's RFC determination was proper. This Court must now assess whether the ALJ properly assessed Gerhardt's ability to perform her past relevant work. The ALJ based his determination that Gerhardt could perform her past relevant work as a

receptionist on the VE's testimony that she could do so. The VE provided the number for the position out of the Dictionary of Occupational Titles ("DOT"), so the AL could verify the VE's testimony. The VE testified that someone with Gerhardt's RFC would be able to perform the duties of a receptionist. This Court finds that the ALJ was entitled to rely on that testimony because it was not apparently flawed as Gerhardt contends.

Finally, Gerhardt argues that all of the jobs that the VE listed in step five are precluded because of the limitations related to Gerhardt's hand limitations. In particular, Gerhardt argues that because the ALJ did not verify the VE's testimony regarding those jobs because they were in conflict with the limitations she claimed to have, he committed harmful error. However, the ALJ is only required to verify the VE's testimony if any apparent conflicts arise between the VE's testimony and the DOT. This Court finds that the VE's testimony was not in apparent conflict with the DOT. As such, this Court finds that the ALJ's determination that Gerhardt can perform the jobs listed by the VE is supported by sufficient evidence in the record.

### III. CONCLUSION

For the above reasons, this Court concludes that the ALJ's determination of Gerhardt's RFC is supported by substantial evidence in the record and supported by a sufficiently articulated analysis by the ALJ. Similarly, the ALJ provided substantial evidence and sufficient articulation in support of his credibility determination. Finally, this Court concludes that the ALJ's conclusions at steps four and five of the analysis were not in error. Therefore, Gerhardt's motion for reverse or remand is **DENIED**. [Doc. No. 1]. The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

**Dated this 8th day of January, 2010.**

 S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United State Magistrate Judge